CHANCERY.

Case 59.

June 9.

## Dean's heirs vs. Dean's Ex'r.

Error to the Mercer Circuit; WILLIAM L. KELLY, Judge.

*Devises. Executors. Powers. Detinue. Equity.*

Judge OWSLEY delivered the Opinion of the Court.

THE testator, Thomas Dean, married a wife, by whom he had eight children, and after her death, he married a second wife, by whom he had six children. The last wife survived him. But before his death, and on the fifth of August, 1807, he made and published, in writing, his last will and testament.

After specifically devising two small tracts of land to one of his children, and a grandchild, he proceeded in his will to make the following disposition of the rest of his estate.

*Dean's heirs vs. Dean's ex'r.*

"My will and desire is, that all the rest of my estate, of every kind, be sold, and the money arising from such sale, be divided in the following manner:

*Thomas Dean's will.*

"To my son John Dean, twelve pounds, ten shillings; to my daughter Keziah Dean, twelve pounds, ten shillings; to my son Job Dean, twelve pounds, ten shillings; to my daughter Ann Dean, twelve pounds ten shillings; to my daughter Milly, who has lately married Hiram Long, twelve pounds, ten shillings; to my daughter Rebecca Bunnel, one shilling; to my daughter Elizabeth Dean, one shilling. My will and desire is, that my wife Diana Dean, have her dower in such manner as the law directs.

"My will and desire is, that after paying the above legacies, the remainder of my estate, of every kind, be sold, and the amount of the same be equally divided between my seven children, hereafter named; that is to say: my son Henry Dean, my son Thomas Dean, my daughter Sophia Dean, my Son Leven Dean, my son Nathan Dean, my son Summers Dean, and my daughter Mary Trigg, to them and their heirs forever. ·

"Lastly I do hereby appoint my two sons, Leven and Nathan Dean, my executors to this my last will, &c."

The will was proved, and admitted to record, in the county court of Mercer; and Leven Dean, one of the executors named, took upon himself the execution of the will, the other executor having refused to qualify, &c.

*Leven Dean qualifies as his ex'or.*

The widow Dean, had her thirds of the estate of the testator assigned to her, under an order of the county court of Mercer made for that purpose.

*Widow's thirds assigned.*

The acting executor, Leven Dean, subsequently departed this life, having previously however, made and published his last will and testament, in which

*Leven Dean dies, and Jones, one of*

<div style="float:left; width:150px;">

Dean's heirs
vs.
Dean's ex'r.

———

his executors,
qualifies.

Subject of the
controversy.

Decree of the
circuit court.

Devise, that

</div>

he named George C. Thompson and Jesse Jones his executors. This will was also proved and recorded in the proper court; and the executor, Jones, took upon himself its execution, George C. Thompson, the other executor having refused to qualify as such.

Diana, the widow of the testator, Thomas Dean, also died; and the slaves, which are the subject of contest in this suit, are the same, and the increase of them, which belonged to the testator, Thomas Dean, and which were assigned to his widow as her dower slaves, in the estate of her deceased husband.

The plaintiffs in error, who were defendants in the court below, claim the slaves under Diana, the widow, to whom, they contend, the absolute estate in fee of the slaves was devised, by the will of the testator, Thomas Dean.

The defendant in error, who is the acting executor of Leven Dean, claims to possess all the power over the slaves that might have been exercised by his testator, Leven, as the executor of the will of the testator, Thomas Dean; and conceiving that, by the will of Thomas Dean, nothing but a life-estate in the slaves was given to Diana, and that after her death the estate in remainder was to be sold for the use and benefit of the seven children to whom testator, Thomas Dean, directed in his will the proceeds of the residue of his estate, after paying legacies, to go, this suit in equity was brought by him, to obtain from the plaintiffs in error, the possession of the slaves, and to enable him, as the executor of the executor, Leven Dean, to make sale of the slaves, and execute the trust which, in his fiduciary station, it has devolved upon him to perform.

The circuit court was of opinion, that the widow, Diana, took but a life estate in the slaves, and that the remainder should be sold for the use and benefit of the seven children, as directed in the residuary bequest of the testator, Thomas Dean, and made a decree accordingly.

The construction put upon the will by the circuit court, has our entire approval and concurrence. It

is indeed impossible, from any expression of the will, to conjecture even a plausible argument in support of the construction contended for by the plaintiffs in error. Instead of using expressions calculated to shew an intention to give to his wife an absolute estate in fee, in any part of his lands or slaves, the testator, with uncommon caution, has referred to the directions of the law, as the standard by which her interest in his estate was to be measured. It was his will and desire, that his wife, Diana, should have her dower in such manner as the law directs. To a scrivener skilled in his art, expressions like these might not have occurred as the most appropriate that could be used, to point out the precise interest intended to be given to the wife; but to a plain man, such as the, writer of the will must undoubtedly have been, the expressions used would naturally occur to be as well calculated as any other, to convey the intention to leave to the wife precisely that interest, and that interest only, in the estate of the testator, which by law she would be entitled to, if no disposition of the estate by the will was made. The interest of the wife, Diana, under the will, is, therefore, in the slaves of the testator, nothing more than for her life, as adjudged by the circuit court.

*Dean's heirs vs. Dean's ex'r.*

*my wife have her dower in such manner as the law directs, gives her an estate in one third of the slaves, for life only.*

And with respect to the interest in remainder, after the death of Diana, the will, if possible, is more explicit, and shews beyond all doubt, that the testator intended it to be sold, and after paying the legacies previously mentioned, to be equally divided between his seven children therein named.

*Remainder in the slaves assigned to the widow, go to the executors to be sold, according to his will.*

But admitting such to be the construction of the will, we are met with an objection as to the right of the defendant in error, who was complainant in the circuit court, to maintain this suit in a court of equity.

*An executor of an executor, is the executor of the first testator, by both the common law, and our statutes.*

The objection was barely stated, without favoring us with the arguments upon which it was expected to be sustained; so that we are left to conjecture, as to the probable grounds upon which reliance is placed by the plaintiffs in error.

Dean's heirs
vs.
Dean's ex'r.

Without intending to controvert the right of the executor, Leven Dean, named in the will of the testator, Thomas Dean, to maintain the suit, if he were still living, it may possibly be supposed, that the complainant in the circuit court, who is the executor of Leven Dean, has not succeeded to the rights and powers of the executor, Leven, in relation to the estate of the testator, Thomas Dean; and that he cannot, therefore, be entitled to maintain this suit for the slaves in question. If, however, it were conceded that the executor, Leven, if living, might maintain the suit, we should have no difficulty in sustaining the suit brought by the complainant, who is his executor. In his capacity of executor, Leven Dean is not admitted to have possessd any power or authority over the slaves in his lifetime, that did not, after his death, devolve upon the complainant, as his executor. It is not only a rule of the common law, that the executor of an executor, is the executor of the first testator; but it is moreover expressly declared, by an act of the Legislature of this country, that, "executors of executors shall do and perform all things, in the execution of the will of the first testator, which shall remain undone at the death of the first executor, and shall and may sue and be sued in all things respecting the estate, in the same manner as such first executor could or might have sued or been sued."

Power given by the testator to his executor, to sell the slaves and divide the proceeds among certain devisees, passes to the executors, and after the widow's death, he shall sell the slaves she had held as dower.

The right of the complainant to maintain any suit which might have been maintained by the exutor, Leven Dean, in his fiduciary character of executor to the testator, Thomas Dean, is therefore unquestionable. But it may possibly be thought by the plaintiffs in error, that as the will of Thomas Dean was made after the passage of the act of 1800, (2 Dig. L. K. 1247,) which declares slaves, as respects last wills and testaments, to be held and deemed real estate, and directs them to pass, by last wills and testaments, in the same manner and under the same regulations as landed property, that any power over the slaves of the testator, Thomas Dean, or right to sue for them, which the executor, Leven Dean, may have possessed in his life time, was not, strictly speaking, a power or right, growing out of, or in-

cidental to, his office of executor, and therefore not transmissible to his executor.

The circumstance of slaves being real estate, and passing by last will and testament, as land, does not, however, in the opinion of the court, affect the question as to the right or power of the complainant, as executor of the executor, Leven, over the slaves.

The will of the testator, Thomas Dean, has omitted to direct by whom the sale of his estate directed to be sold, should be made; and considered as real estate, under the act of the Legislature of this country, it became the duty of the executors, or such of them as undertook to act, to make sale of the slaves.

The forty-fourth section of the act of the legislature of this country, concerning executors and administrators, (1 Dig. L. K. 531,) provides; "the sale and conveyance of lands devised to be sold, shall be made by the executors, or such of them as shall undertake the execution of the will, if no other person shall be thereby appointed for that purpose, or if the person so appointed shall refuse to perform the trust, or die before he shall have completed it."

Now the power which is thus given to executors, and the duty imposed upon them by this section, are understood to be incidental to the office of executor, and should like other executorial functions, be performed by those upon whom the office devolves. It was accordingly, upon this construction of the act, decided in the case of Anderson against Turner, (3 Marsh. 131,) that the power of executors to sell and convey land, which by the will of the testator was directed to be sold, without naming by whom the sale was to be made, survived to the surviving executor.

The preceding remarks have been made to prove, that as the executor of Leven Dean, the complainant has the same power over the slaves, and the same right to sue for and recover them, that was possessed by the executor, Leven, in his life time. But is it true that Leven Dean, as the executor of

*Margin notes:*

DEAN'S heirs
vs.
DEAN'S ex'r.

Where the testator devises that land or slaves shall be sold, without saying by whom, the executors who qualify, and after the death of the survivor, *his* executor shall exercise the power.

DEAN's heirs
vs.
DEAN's ex'r.

An executor empowered by the will to sell slaves for the benefit of certain devisees, cannot maintain detinue against the heirs who obtain the possession.

In such case, the possession may be recovered by bill in equity.

the testator, Thomas Dean, might maintain a suit in equity for the slaves, if he were living?

Under the act to which we have last referred, it would undoubtedly be incumbent upon him, if living, to make sale of the slaves, in conformity to the directions of the will, and to enable him to do so most beneficially for the estate, it would seem that some means of obtaining the possession of the slaves held adversely by the plaintiff in error, should be afforded. If, however, there be any possible means, by which he can recover the possession, it must unquestionably be by a suit in equity. Not having the legal title to any of the slaves, the forms of law, which are adapted exclusively to rights of that sort, are totally inadequate to give redress. But courts of equity are not governed by the same formal restriction that control courts of law. It is, indeed, not unusual, where, from defect of the forms of law, justice cannot be obtained in courts of common law, for courts of equity to lend their assisting hand, and give relief. The propriety of doing so in this case is peculiarly apparent; not only on account of the lack of authority in the courts of law, but because the power of the executor over the slaves is in the nature of a trust, which it is at all times a province of courts of equity to control and their duty to afford the most ample assistance in removing all obstructions to its fulfilment.

The decree must be affirmed, with costs.

*Daviess* for plaintiffs; *Mayes* for defendants.

---

MOTION.

Case 60.

June 9.

Facts of the case.